```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                      )
UNITED STATES OF AMERICA,             )
                                      )
     v.                               )   C.R. No. 00-032 WES
                                      )
JOSE RAUL GONZALEZ,                   )
                                      )
     Defendant.                       )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is Petitioner Jose Raul Gonzalez's Verified Motion Under 22 U.S.C. § 2255 or in the Alternative for a Writ of Coram Nobis to Vacate Plea and Sentence ("Gonzalez's Motion" or "Petition"). ECF No. 25. For the reasons given below, the Court DENIES Gonzalez's Motion.

## I. BACKGROUND

This story begins on May 4, 2000, when Jose Raul Gonzalez pleaded guilty to distributing heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). Gov't's Resp. Opp'n Gonzalez's Mot. ("Gov't's Resp.") Ex. 1, at 1, 5, ECF No. 31-1. Attorney John M. Cicilline was Gonzalez's counsel of record with whom he discussed the terms and conditions of the plea agreement. Gov't's Resp. Ex. 3 ("Plea Agreement"), at 6, ECF No. 31-3. A translator also assisted Gonzalez with interpreting the Plea Agreement. Id.

As is customary, a U.S. Probation Officer prepared a Presentence Investigation Report, which was completed on June 16, 2000. Gov't's Resp. Ex. 9 ("PSR"), at 2, ECF No. 33. Gonzalez, through Cicilline, submitted a statement that was included in the PSR. Id. at 4. In his statement, Gonzalez acknowledged that he was "facing deportation" because of his conviction. Id.

A month later, on July 21, the court imposed final judgment in the case. Gov't's Resp. Ex. 5 ("Final Judgment"), at 1, ECF No. 31-5. Cicilline continued to represent Gonzalez at this stage. Id. The Final Judgment contained, as a special condition of supervised release following the term of imprisonment, a directive to report to immigration officials for deportation. Id. at 4. It further mandated that, "if deported, [Gonzalez] shall remain outside the United States" during the time of supervision. Id.

On March 27, 2001, while incarcerated, Gonzalez sought to expedite his deportation proceedings. Mot. Have INS Expedite Removal Proc. ("Mot. Expedite") 1-2, ECF No. 21. He contended that he should not be deported because of his longtime lawful residence in Rhode Island and close ties to the state and country, among other reasons. Id. His request for speedy process was denied, Order, ECF No. 24, and the proceedings took place in due course; Gonzalez was ordered deported from the United States on December 13, 2001. Gov't's Resp. Ex. 10 ("Rec. Removal Proc."), at 6, ECF No. 31-9. On February 19, 2002, Gonzalez signed an

Immigration and Naturalization Service ("INS") form titled "Warning to Alien Ordered Removed or Deported," acknowledging that following his impending removal, he was "prohibited from entering, attempting to enter, or being in the United States . . . [a]t any time . . . ." Id. at 10-11. He was physically removed from the United States that same day and has lived outside the country ever since. Pet'r's Resp. Gov't's Resp. Opp'n Gonzalez's Mot. ("Gonzalez's Reply") 8, ECF No. 41.

The story picks up nearly twenty-one years later, on January 26, 2023. On that day, Gonzalez – now living in Spain - turned sixty-five years old, and shortly thereafter tried to apply for his U.S. Social Security retirement benefits. Gonzalez's Mot. ¶ 14. It was only then that he "discovered that his guilty plea and deportation resulted in a forfeiture" of those benefits.[1] Id. ¶ 15. Before Gonzalez had pleaded guilty, Cicilline apparently failed to advise Gonzalez about any effect the conviction and deportation might have on Social Security retirement benefits. Gonzalez's Reply Ex. 1 ("Cicilline Decl."), at 3, ECF No. 41-1. Following this discovery, Gonzalez then tried to return to the United States, at which point he claims to have first learned that he was also permanently barred from reentry. Gonzalez's Mot. ¶ 16.

---

[1] The Government contests Gonzalez's claim that he is entitled to any Social Security retirement benefits. Gov't's Resp. Opp'n Gonzalez's Mot. 8-10, 21, ECF No. 34. The Court here assumes without deciding that Gonzalez is entitled to them.

3

Gonzalez asserts that Cicilline wrongly advised him that after "a period of years" he "could reapply for a visa to enter the United States and get a green card in the future." Cicilline Decl. 2.

That brings this story to its current chapter. On December 7, 2023, Gonzalez filed his petition to vacate his guilty plea and sentence, now pending before the Court. Gonzalez's Mot. He argues that his plea "was not knowing or voluntary as he did not have effective assistance of counsel," and that he "would not have pled guilty had he known the full repercussions of such a plea and resulting [permanent] deportation." Id. ¶ 17. The Government opposes Gonzalez's Petition. Gov't's Resp., ECF No. 31; Gov't's Suppl. Resp. Opp'n Gonzalez's Mot., ECF No. 35.[2]

## II. LEGAL STANDARD

Because Gonzalez does not allege that he is in federal custody, the Court construes his motion as a petition for a writ of error coram nobis and not for relief under 22 U.S.C. § 2255. See Trenkler v. United States, 536 F.3d 85, 96-98 (1st Cir. 2008) (explaining the difference between section 2255 and other common

---

[2] Gonzalez objects to the Government's Supplemental Response, ECF No. 35, arguing that the Court should disregard it because the Government did not seek leave to file it. Pet'r's Obj. Gov't's Suppl. Resp. Opp'n Gonzalez's Mot. ("Gonzalez's Obj."), ECF No. 38. The Government rebutted Gonzalez's argument. Gov't's Resp. Pet'r's Obj. Gov't's Suppl. Resp. Opp'n Gonzalez's Mot., ECF No. 39. Because the Government's Supplemental Response does not affect the Court's ruling on Gonzalez's Petition, the Court has not considered it.

4

law writs and noting that "the writ of error coram nobis, in its modern form, is ordinarily available only to a criminal defendant who is no longer in custody"); cf. 28 U.S.C. § 2255 (limiting relief to "prisoner[s] in custody"). Gonzalez, in his most recent filing, agrees with this construction. Gonzalez's Reply 11 (clarifying that Gonzalez seeks a writ of coram nobis and not a writ of habeas corpus).

The writ of error coram nobis is "a remedy of last resort for the correction of fundamental errors of fact or law" that can vacate a prior conviction. Williams v. United States, 858 F.3d 708, 711-12 (1st Cir. 2017) (quoting United States v. George, 676 F.3d 249, 253 (1st Cir. 2021)). "The authority to grant coram nobis relief derives from the All Writs Act, 28 U.S.C. § 1651(a), which empowers federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" George, 676 F.3d at 253. The Court must not grant this remedy lightly. Id. at 251, 254 (describing coram nobis relief as "strong medicine," "hen's-teeth rare," and like a "Hail Mary pass"). The writ "should issue 'only under circumstances compelling such action to achieve justice.'" Id. at 253 (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)).

Accordingly, the Court may only grant Gonzalez coram nobis relief if he (1) adequately explains why he failed to seek earlier

5

relief from the Final Judgment, (2) shows that he continues to suffer significant collateral consequences from the judgment, and (3) demonstrates that the Final Judgment resulted from an error of the most fundamental character. Id. at 254. Gonzalez bears the burden of persuasion at each step. Id. at 255. And because of the "extraordinary" nature of this relief, even if Gonzalez makes these three showings, "the [C]ourt retains discretion" to deny the writ and "refrain from upsetting a conviction that has long since become final." Id.

### III. APPLICATION

#### A. Explanation for failure to seek earlier relief from the Final Judgment

Calculating how long Gonzalez waited to pursue post-conviction relief is at the heart of this inquiry. Gonzalez filed his pending Petition on December 7, 2023. But the calculation turns on the question of when Gonzalez's clock started to run – that is: when did he discover the "fundamental error" in his case? Both the Government and Gonzalez debate this question at length in their respective filings. Gov't's Resp. 13-17; Gonzalez's Reply 11-16.

On one side, the Government asserts that Gonzalez's clock began to run when he first "became aware that his conviction may result in a bar to re-entry." Gov't's Resp. 13. It places that date as December 2001, when Gonzalez was first ordered deported.

Id. at 15-17.  Thus, under the Government's view, Gonzalez waited nearly twenty-two years to seek relief; a timeframe too long to be reasonable.  Id.

On the other side, Gonzalez argues that his clock started when he learned his conviction resulted in a loss of his Social Security retirement benefits and a <u>permanent</u> bar on reentering the United States.  Gonzalez's Mot. ¶¶ 15-16;  Gonzalez's Reply 14-16.  He argues that date to be January 2023, following his sixty-fifth birthday.  Thus from his perspective, although twenty-two years had passed since the Plea Agreement and Final Judgment, the relevant time is the less-than-one-year period between his recent discoveries and subsequent filing.  Gonzalez's Reply 14-16.  He contends that this timeframe is reasonable.  Id.

The Court finds that Gonzalez was aware of the permanent bar on reentering the United States no later than February 19, 2002. Prior to that date, it was reasonable for Gonzalez to rely on Cicilline's misguided advice that the bar on reentry was not permanent.  But on February 19, 2002, Gonzalez affirmatively acknowledged that following his deportation, he was "prohibited from entering, attempting to enter, or being in the United States . . . [a]t any time."  Rec. Removal Proc. 10-11.  Now Gonzalez asserts that, despite having received and explicitly acknowledged this directive, he did not actually understand it.  Gonzalez's Reply 7-8.  The Court is not persuaded.  As Gonzalez notes now and

7

noted in his Motion to Expedite his removal proceedings, he never wanted to leave the United States in the first place, due to his strong ties this country. Gonzalez's Reply 2-5; Mot. Expedite 1-2. He argues that he sought to expedite his removal proceedings because wanted to quickly begin his "waiting period," if he was ordered deported, so that he could return as soon as possible. Gonzalez's Reply 6. And yet Gonzalez apparently made no attempt in the next twenty-years to determine what his "waiting period" would be, or to try to return to the United States. This is persuasive evidence that, when Gonzalez signed to acknowledge the INS "Warning to Alien Ordered Removed or Deported," he in fact understood that the bar on reentry was permanent.

While there is no fixed deadline by which a petitioner must seek coram nobis relief, the delay must be "adequately explain[ed]." Williams, 858 F.3d at 714. And this requirement must be applied in a "flexible, common-sense manner" on a "case-by-case" basis. George, 676 F.3d at 255. Here, the Court finds that Gonzalez's delay of approximately twenty-one years after becoming aware of the permanent bar on reentry is not adequately explained, and that Gonzalez may not seek coram nobis relief on this ground. See, e.g., Adim v. United States, No. 23-cv-12525, 2024 WL 3902837, at *4-5(D. Mass. Aug. 22, 2024) (finding coram nobis petition untimely where petitioner knew of immigration consequences for approximately twenty-three years); United States

8

v. Medina Puerta, 15-cv-14257, 2019 WL 11639554, at *3 (D. Mass. Sep. 10, 2019) (denying coram nobis petition as untimely after eighteen-month delay), aff'd, 2020 WL 11420698 (1st Cir. Dec. 9, 2020), cert. denied, 142 S. Ct. 503 (2021).

However, the Court finds that Gonzalez did not become aware of the loss of his Social Security retirement benefits until January 2023. Cicilline apparently never advised him on this point. Cicilline Decl. 3. Thus, it is reasonable to calculate his delay in filing the current Petition as the time between January 2023 and December 2023. This is less than the one-year statute of limitations applicable to habeas petitions under 28 U.S.C. § 2255. While that statute of limitations does not apply here, it is helpful in assessing the reasonableness of Gonzalez's delay. As such, he may pursue coram nobis relief for his unknowing forfeiture of Social Security retirement benefits. This approach accords with the First Circuit's guidance to administer the test for coram nobis relief "in a flexible, common-sense manner." George, 676 F.3d at 255.

**B. Showing of significant continuing collateral consequences**

The First Circuit has not stated a clear rule for what comprises a continuing collateral conviction. Williams, 858 F.3d at 715. At minimum, "something 'more than the mere fact of conviction is needed.'" Id. (quoting Murray v. United States, 704 F.3d 23, 29 n.6 (1st Cir. 2013); George, 676 F.3d at 255-56. In

9

Williams, the court found that the threat of deportation "at any moment" sufficed. 858 F.3d at 715. And in Woodward v. United States, the First Circuit panel did not disturb the district court's finding that the loss of a monthly pension constitutes a significant collateral consequence. 905 F.3d 40, 43 (1st Cir. 2018). Here, Gonzalez not only is continually banned from reentering the United States following his deportation but is also continually deprived of the monthly Social Security retirement benefits he alleges to have earned. Gonzalez's Reply 16-17. Although the Court has concluded that Gonzalez's permanent deportation is not a valid basis for the relief he seeks, it does impact his ability to address and potentially resolve his alleged deprivation of retirement benefits. For these reasons, the Court concludes that Gonzalez continues to suffer significant collateral consequences and that the relief he seeks could remedy those consequences.

**C. Demonstration that the Final Judgment resulted from an error of the most fundamental character**

Gonzalez argues that his conviction resulted from ineffective assistance of his defense counsel ("IAC") which, "if true, can function as the rock upon which a petitioner can build [his] coram nobis church." Williams, 858 at 712; see Strickland v. Washington, 466 U.S. 668, 687 (1999) (recognizing right to effective counsel under the Sixth Amendment); U.S. Const. amend. VI. Specifically,

10

Gonzalez states that his counsel's performance was deficient because Cicilline both failed to advise him about his forfeiture of Social Security retirement benefits and misadvised him about his permanent ban from the United States. Gonzalez's Mot. ¶¶ 9-11, 17. But for these issues, he says that he would not have pleaded guilty. Id. ¶ 17.

For this argument to succeed, Gonzalez "must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" Williams, 858 F.3d at 715 (quoting Strickland, 466 U.S. at 687). Because Gonzalez's Petition is untimely filed as it relates to his bar on reentry, the Court considers Gonzalez's IAC claim only for Cicilline's failure to advise him about his forfeiture of Social Security retirement benefits.

To prove his counsel's performance was constitutionally deficient, Gonzalez must show that Cicilline's failure to advise was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (quoting Strickland, 466 U.S. at 687). In reviewing such an allegation, the Court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Woods v. Donald, 575 U.S. 312, 315 (2015)).

The Court finds that Cicilline's failure to advise Gonzalez

11

of the forfeiture of Social Security retirement benefits was not constitutionally deficient, for two reasons. First, the Court is not aware of, and Gonzalez does not provide, any precedent holding that an attorney's failure to advise a client on the impact of a conviction on the client's Social Security retirement benefits can rise to the level of constitutional deficiency. And, as the Government points out, multiple courts have ruled against that proposition. Gov't's Resp. 23 (first citing United States v. Gamble, Cr. No. 14-20171, 2020 WL 475832, at *10 (W.D. Tenn. Jan. 29, 2020); then citing United States v. Stratman, No. 22-CR-15, 2023 WL 8650972, at *5 (D. Neb. Dec. 14, 2023); and then citing United States v. Sawaf, N.: 01-47, 2017 WL 9486187, at *6 (E.D. Ky. Aug. 7, 2017)). Second, even if the allegation could support an IAC claim generally, the Court cannot grant relief for an IAC claim based on an alleged "failure to advise" theory for any judgment entered prior to 2010. Williams, 858 F.3d at 716-17 (holding that the petitioner, whose judgment was entered in 2005, could not seek coram nobis relief based on claim that his attorney was constitutionally ineffective by failing to advise him of the immigration consequences of pleading guilty) (citing Chaidez v. United States, 568 U.S. 342 (2013)). Gonzalez's Final Judgment was entered in 2000, ten years before such a claim became available. Therefore he, like the petitioner in Williams, cannot seek relief on this ground.

Because the failure to advise was not constitutionally deficient, the Court finds that it does not render Gonzalez's decision to plead guilty involuntary, as Gonzalez argues. In rejecting Gonzalez's Petition, the Court does not endorse Gonzalez's deportation, permanent exile from this country, or deprivation of Social Security retirement benefits — all for a relatively minor drug offense. But the writ of error coram nobis is "extraordinary relief," and because Gonzalez cannot satisfy this difficult standard, the Court must "refrain from upsetting a conviction that has long since become final." George, 676 F.3d at 255.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Gonzalez's Verified Motion Under 22 U.S.C. § 2255 or in the Alternative for a Writ of Coram Nobis to Vacate Plea and Sentence, ECF No. 25.

IT IS SO ORDERED.

_/s/ WESmith_
William E. Smith
District Judge
Date: November 25, 2024

13